FILED

2006 Oct-31  PM 03:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANTHONY EVANS and MARY EVANS,** | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:05-cv-00825-UWC** |
| | ) | |
| **SANMINA-SCI CORPORATION,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT**

Proceeding under the Family Medical Leave Act, 42 U.S.C. Section 2611, *et seq.* ("FMLA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, *et seq.* ("Title VII"), Plaintiff Anthony Evans makes two claims of retaliation against Defendant Sanmina-SCI Incorporated ("SSCI"). First, Anthony Evans alleges that his 2004 layoff by SSCI during an otherwise legitimate reduction in force ("RIF") was a pretext for retaliation based on 1) his having preciously taken FMLA leave, and 2) his wife, Plaintiff Mary Evans, having filed a Title VII lawsuit against the Defendant in 2000.

Plaintiff Mary Evans claims that SSCI denied her merit increases in 2002 and

1

2004 and laid off her husband in retaliation for her having filed a Title VII lawsuit in 2000.

Defendant SSCI has filed a Motion for Summary Judgment (Doc. 24, 27) against each Plaintiff.  Based on the undisputed facts, construed in a light most favorable to the Plaintiffs, SSCI is entitled to judgment as a matter of law.

## A. The Undisputed Facts

### 1. Anthony Evans

Anthony Evans was initially hired by SCI Incorporated ("SCI") in the late 1980s, but was later terminated by his supervisor.  He was subsequently rehired by SCI Incorporated in 1997. In 2001, Sanmina Corporation merged with SCI, forming the present Defendant, Sanmina-SCI Corporation ("SSCI").

While employed by SSCI, Anthony Evans worked as a Plastics Technician.  He did not possess a Plastics DV certification, and he lacked surface mount technology skills, high level soldering experience, and military specifications or high reliability specifications. While his performance evaluations reflect that he satisfactorily performed his duties, he was never rated as "exceptional" or "exceeding expectations." His 2003 evaluation reflected that he needed to broaden his work knowledge; but the record does not reflect any effort on his part to do so.

In June 2004, Anthony Evans took FMLA leave for the purpose of having back

surgery. He returned approximately six weeks later on or about August 10, 2004. He

did not encounter any problems from SSCI's Human Resources Department or his

supervisor, Michelle Simpson, when taking leave or returning therefrom.

Approximately one month after he returned from leave, Evans re-injured his

back while at work. Several days later, he mentioned to Simpson that he was having

back pain. Simpson responded that "now is not a good time to take off work, there is

going to be a layoff." (Def. Br. in Supp. of Mot. for Summ. J., Doc. 28, Ex. A, A.

Evans Dep. at 57-58.).[1]

On December 3, 2004, Anthony Evans and fifteen other employees were laid

off as part of a legitimate RIF.[2] Roy Moultrie, the head of the Plastics Department,

made the final selection of employees to be laid off from his department. In retaining

employees during this layoff, the Company maintains that it aimed to retain those

employees who possessed the greatest skill sets and facilitate wide range flexibility.

Anthony Evans is the husband of Plaintiff Mary Evans.

### B. Mary Evans

Mary Evans was hired by SCI on November 7, 1987. In 1998 or 1999, Mary

Evans filed an Equal Employment Opportunity Commission ("EEOC") charge against

---

[1]Anthony Evans did not request leave for this injury.

[2]Michelle Simpson was also laid off during this period of time.

SCI.  In 2000, she filed a Title VII lawsuit against SCI, alleging gender discrimination based on the failure of SCI's insurance policy to cover infertility.  The lawsuit was dismissed in 2002. Nonetheless, Mary Evans continued to work for SSCI.

Amy Arnts became Mary Evans' supervisor in January 2002. She was responsible for evaluating Mary Evans' job performance.

With the exception of 2004, Mary Evans received merit increases every year that they were given to other employees. Although Amy Arnts recommended Mary Evans for a two percent (2%) merit increase in 2004, the recommendation was rejected by Jason Chamberlain, the Senior Vice President the division in which Mary Evans worked.  The basis of Chamberlain's rejection of the recommendation was that Mary Evans had initially been selected for the group of employees to be laid off in 2004; and as such, she was in the bottom twenty percent (20%) of employees in her group. Typically, merit increases are not given to employees in the lower twenty percent of the group.

Chamberlain was hired subsequent to the dismissal of Mary Evans' Title VII case.  There is no evidence that at the time he rejected a merit increase for Mary Evans in 2004, Chamberlain was aware that she had previously filed an EEOC charge or a lawsuit against SCI.

Mary Evans filed a second charge of discrimination against SSCI in April

2005.  There she complained of retaliation because of her previous charge in that her husband had been laid off and she "did not receive job training or an increase in salary whereas [her] comparators have had job training and raises."  (Def. Br. in Supp. of Mot. for Summ. J., Doc. 25, Ex. A, M. Evans Dep. at Ex. 9.)  But in her deposition, Mary Evans conceded that she had no evidence that any denial of training or wage increases in 2004-2005 was related to her Title VII lawsuit. (M. Evans Dep. at 120-127.)[3]

Mary  Evans voluntarily resigned from her position with SSCI on or about January 16, 2006.[4]

---

[3]
| | | |
|---|---|---|
| Q | Okay. Do you have any reason or do you have any information that would indicate that you not receiving an increase in 2002 had anything to do with your prior lawsuit? |
| A. | Not to my knowledge. |
| Q. | What about in 2004? |
| A. | Not to my knowledge. My job evaluations never changed. |
| Q. | Well, what I am asking is do you have any information that would link you not receiving one to your prior lawsuit? |
| A | No. |
| Q. | And that's for 2004 and 2005 as well. |
| A. | To the best of my recollection those years I didn't receive them either. |
| Q. | But what I am asking is for the year 2004, do you have any information that would lead you to believe that you not receiving an increase in 2004 had something to do with your lawsuit that ended in 2002? |
| A. | Not to my recollection, no. |

(*Id.* at 125-26.)

[4] In her resignation letter, Mary Evans stated:

My decision to resign was finalized after long and careful consideration of all of

5

## II. Controlling Legal Principles

### A. Summary Judgment

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law.  *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c).

The party requesting summary judgment always has the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56(c)). "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party."  *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979).   Evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact.  *See, e.g.*, *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

---

the factors. I regret leaving friends here; however, I feel the change will be beneficial to me and my family. . . .

Again it has been a pleasurable learning experience working as part of your team and I wish you nothing but success for you and Sanmina-SCI.

(M. Evans Dep. at Ex. 10.)

6

B. Retaliation Under the FMLA and Title VII

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in [the FMLA]." 29 U.S.C. § 2615(a)(1).  The FMLA authorizes two types of actions:  1) inference claims, in which an employee contends that her employer denied or otherwise interfered with her substantive rights; and 2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001); *see also* 29 U.S.C. § 2615(a)(1)-(2).

In evaluating FMLA retaliation claims where the plaintiff lacks direct evidence[5] of discrimination, the Eleventh Circuit applies the burden shifting framework standard set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  To prevail on a retaliation claim under the FMLA, a plaintiff must establish a *prima facie* case consisting of three elements: (1)

---

[5] Direct evidence is "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086  (11th Cir. 2004) (citation omitted).  The Evans do not allege direct evidence of retaliation. Instead, they urge the Court to draw an inference of retaliation from circumstantial evidence in the record.

the employee availed himself of a protected right under the FMLA; (2) he suffered an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse employment decision.  *Parris v. Miami Herald Pub. Co*., 216 F.3d 1298, 1301 (11th Cir. 2000); *see also Galloway v. GA Tech. Auth.*, No. 05-15055, 2006 WL 1327808, at *2 (11th Cir. May 16, 2006).  To establish a causal connection under the FMLA, a plaintiff is only required to prove that the protected activity and the adverse action are not completely unrelated.  *See Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460 (11th Cir. 1998).[6]

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  Once the employer articulates a non-discriminatory reason for its action, the plaintiff must then prove that the articulated reason is only a pretext for retaliation.  *See E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).

## D. Analysis

Plaintiff Mary Evans has not established the second element of a *prima facie* case.  She has simply failed to show any adverse employment action directed against her.  She admits that there is no evidence that she was denied training or merit

---

[6] The analysis for Title VII claims is the same.

increases in the relevant time frame because of her Title VII charge or the ensuing lawsuit. She voluntarily resigned.  She lacks standing to assert a retaliation claim on behalf of her husband, Anthony Evans. *See Miller v. Bed, Bath & Beyond*, 185 F.Supp.2d 1253, 1274 (N.D.Ala.2002).

Under *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) and *Higdon v. Jackson,* 393 F.3d 1211, 1220-21 (11th Cir. 2004)*,* neither of the Plaintiffs have shown the requisite "close temporal proximity."  The protected activity of Mary Evans transpired  in the 2000-2002 period.  Anthony Evans' FMLA leave ended in August 2004; he was not laid off until four months later.  A four month period between the protected activity and the adverse action is not sufficiently close to support a reasonable inference of a causal connection between the protected activity and the adverse action. *Clark County Sch. Dist.,* 532 U.S. at 273; *Higdon,* 393 F.3d at 1220-21. Thus, both Plaintiffs have failed to establish their prima facie case.

Assuming *arguendo* that Anthony Evans has established a *prima facie* case, he has failed to demonstrate that his layoff was a pretext for retaliation. The evidence simply does not discredit the employer's articulated reason that Anthony Evans was not retained because he was not one of the employees with greater skill sets and job flexibility.

For these reasons, the motions for summary judgment will be granted by separate order.

Done the 31st day of October, 2006.

_____
U.W. Clemon
Chief United States District Judge